## MATTHEW WATSON v. SAMUEL TEMPLETON.

Objection by drawer of a bill of exchange of insufficient demand of the acceptor. The notary went to the place of business of the acceptors, (*Wm. Laughlin & Co.*,) and finding it shut, made protest for non payment, without making inquiry for the residence of the acceptors. *By the Court:* We consider a demand, within the usual business hours, at the commercial domicil of a partnership, for the payment of a note, or bill due by the firm, a sufficient presentment. It was not necessary to make a further demand at the private residence of the individual partners. The place of business is the domicil of the firm, and it is their duty to have suitable persons there to receive and answer all business demands. We express no opinion as to the degree of diligence requisite, where the obligation is that of one doing business alone, and where the debtor has both a domicil and place of business, the latter being closed at the time of the presentment.

Notice by the notary to the last endorser exclusively, is a strict compliance with commercial usage, especially if he be ignorant of the residence of the other parties.

Where the distance is such as to require the interval of several days for the purpose of communication, then "the day" which each endorser is allowed, within which to give his notices in turn, will commence with that on which he himself receives notice.

APPEAL from the District Court, Tenth District, Parish of Carrol, *Snyder, J. Selby*, for plaintiff. *Caldwell*, for defendant and appellant.

LEA, J. This is a suit by the holder against the drawer of a protested bill of exchange.

The defendant's counsel has urged in argument, that the evidence establishes an insufficient demand of the acceptor and a want of proper diligence in notifying the drawer. Other matters also have been urged on behalf of the defendant, which we consider it unnecessary to discuss.

On the 19th February, 1850, the defendant drew his draft upon *Wm. Laughlin & Co.*, of this city, in favor of *C. J. Searls*, for the sum of $2500, payable ten months after date. This bill, after acceptance, was, in due course of business, discounted by the Planters' Bank, of Nashville, and was, by the officers of that institution, transmitted for collection to the Mechanics' and Traders' Bank of this city, where the acceptors resided. The bill is dated in New Orleans, though the drawer, it appears, resides and did reside at the time the draft was drawn, in the parish of Carroll, in this State, to which place he removed from Warren County, in the State of Mississippi, the place of his previous residence.

On the maturity of the note, a presentment for payment was made at the place of business of the acceptors by a notary public, who, finding it shut, made protest for non payment, without making further inquiry for the residence of the acceptors, and on the same day, sent notice of the same, by mail, to the President of the Bank of Nashville, enclosing in the same letter the notices for the other parties to the bill. These notices were received in due course of mail, on the 6th January, 1851, by the officers of the bank, who, after diligent inquiry made of several persons, and especially of the party from whom they had received the bill, being unable to obtain any positive information with reference to the defendant's place of residence, on the same day on which they themselves received notice, deposited the original and duplicate notices of protest in the post-office at Nashville, directed separately to the defendant at five different post-offices in the State of Mississippi, being those at which they supposed they would be most likely to reach the defendant.

18

WATSON
v.
TEMPLETON.

Now it remains to be determined under this state of facts:

1st. Whether a proper presentment and demand of payment was made by the notary;

2d. Whether the notary took the customary and legal steps for giving notice of protest to the other parties to the bill;

And 3d. Whether the plaintiff used due diligence in attempting to give notice to the drawer.

We consider a demand made, within the usual business hours, at the commercial domicil of a partnership, for the payment of a note or bill due by the firm, a sufficient presentment. It was not necessary to make a further demand at the private residence of the individual partners. The place of business is the domicil of the firm, and it is their duty to have suitable persons there to receive and answer all business demands made at that place. We express no opinion as to the degree of diligence requisite where the obligation is that of one doing business alone, and where the debtor has both a domicil and place of business, the latter being closed at the time of the presentment. See Story on Promissory Notes, § 235.

We think the notary, under the circumstances, complied strictly with commercial usage in giving notice exclusively to the last endorser.

Mr. Chitty lays down the rule as follows: "It is usual for the holder *only* to give notice to the person from whom he immediately received the bill or note especially if he is ignorant of the residence of the other parties (as in the case at bar); and if so, his neglect to give notice to the other prior endorsers and to the drawer, cannot, on any sound principle, deprive either of the endorsers of the right to proceed against the person who endorsed to him and all prior parties: provided, he, in his turn, has duly forwarded notice." The rule is, therefore, clearly settled, that each party to a bill or note, whether by endorsement or mere delivery, has, in all cases, until the day after he has received notice, to give or forward notice to his prior endorser, and so on till the notice has reached the drawer."

See Story on Promissory Notes, sec. 331, and notes.

And where the distance is such as to require an interval of several days for the purposes of communication, then "the day" which each endorser is allowed, within which to give his notices in turn, will commence with that on which he himself receives notice. The notary testifies in this case that he was ignorant of the residence of the drawer, and that the office of the acceptors, where such enquiry might have been made, being shut, he directed the notices according to the law and usage in such cases. For a further illustration of this subject, see the opinion of Chief Justice Slidell in the case of *Carmena v. The Bank of Louisiana*, 1st An., 370.

Up to the time, therefore, that the Bank of Nashville received notice of protest, there had been no discharge of the drawer. Were its officers guilty of any such laches, after that notice had been given, as operated a release of his liability? It appears to us that they used all reasonable diligence in endeavoring to discover the residence of the defendant. The endorsee of the note, from whom they received it, gave them no information. They were not bound to make public proclamation, or to go to the useless expense of advertising for information concerning the residence of one whose domicil was in another State.

The doctrine on this subject is clearly and concisely stated in Kents' Com-

mentaries, vol. 3d, sec. 44, p. 105, from which we extract a single sentence, as specially applicable to this case: " The law does not presume that the holder of the paper is acquainted with the residence of the endorsers; and if the holder or notary, after diligent enquiry as to the residence of the endorser, cannot ascertain it, or *mistakes it* and *gives the notice a wrong direction*, the remedy against the endorser is not lost."

It has not been suggested, and we are at a loss to conceive what further enquiries, with any reasonable hope of obtaining additional information, the officers of the bank could have made.

We think there is no error in the judgment appealed from.

Judgment affirmed.